**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

HELEN M. GREEN,

                  **Plaintiff,**

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                  **Defendant.**

Civ. No. 17-3122 (KM)

**OPINION**

### KEVIN MCNULTY, U.S.D.J.:

Helen Green brings this *pro se* action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying in part and granting in part her claims to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401–34, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381.

The Administrative Law Judge ("ALJ") agreed that Ms. Green was currently disabled, but disagreed with her as to the onset date. The ALJ determined that Ms. Green did not meet the Act's definition of disability from April 2, 2010—the alleged disability onset date—until June 1, 2014.[1] The ALJ's finding of non-disability in the pre-June 1, 2014 Relevant Period meant that Ms. Green was ineligible for any DIB (her date last insured was June 30, 2013), and also of course that she was ineligible for SSI backpay for the Relevant Period. She challenges that ALJ's denial of benefits. The ALJ found, however,

---

[1] Throughout this Opinion the period between Ms. Green's alleged disability onset date, April 2, 2010, and the date on which the ALJ determined that Ms. Green became disabled, June 1, 2014, will be referred to as the "Relevant Period."

that Ms. Green became disabled as of June 1, 2014, and ruled that she was eligible for SSI from that date forward. Ms. Green of course does not challenge that favorable aspect of the ALJ's decision.

The Appeals Council denied review, rendering the ALJ's decision a final, reviewable decision, and Ms. Green filed this action. For the reasons set forth below, the decision of the ALJ is affirmed.

## I. BACKGROUND[2]

On September 20, 2010, Ms. Green filed a Title II application for a period of disability and DIB. (DE 20 at 24). Ms. Green also filed a Title XVI application for SSI on September 21, 2010. (*Id.*). In both applications, Ms. Green alleged disability beginning on April 1, 2010. These claims were initially denied in January 2011, and after an oral hearing, in a decision dated March 21, 2012, ALJ April M. Wexler determined that Ms. Green was not disabled through the date of that opinion and therefore ineligible for DIB or SSI at that time. (DE 20 at 32). The SSA Appeals Council denied Ms. Green's request for review. (DE 20 at 3). That earlier ALJ decision is part of the background, but is not the subject of Ms. Green's current appeal before this Court.

Thereafter, on July 9, 2013, Ms. Green filed a Title II application for a period of disability and DIB. (R. 18). Ten days later, on July 19, 2013, Ms. Green also filed a Title XVI application for SSI. (*Id.*). In both applications, Ms. Green alleged disability beginning on April 2, 2010. These claims were initially denied in November 2013, and then denied again upon reconsideration in February 2014. (*Id.*). Subsequently, Ms. Green filed a written request for hearing on March 20, 2014. (*Id.*).

---

[2] Citations to the record are abbreviated as follows:

"R." = Administrative Record (DE 10) (The cited page numbers correspond to the number found in the bottom right corner of the page for all DE 10 attachments)

"Pl. Br." = Brief in Support of Plaintiff Helen Green (DE 11)

"SSA Br." = Social Security Administration Secretary's Responding Brief (DE 14)

2

After appearing and testifying at hearings held on August 13, 2015 (R. 37-71), and May 18, 2016, (R. 72-91), in which Ms. Green was represented by counsel, ALJ Donna Krappa determined the following in an opinion dated July 13, 2016: (1) based on her July 9, 2013 application for a period of disability and DIB, Ms. Green was not disabled under Sections 216(i) and 223(d) of the Act through June 30, 2013, the date last insured; and (2) based on her application for SSI filed on July 19, 2013, Ms. Green has been disabled under Section 1614(a)(3)(A) of the Act, but only since June 1, 2014. (R. 18-29).

On August 18, 2016, Ms. Green filed a request for review by the SSA Appeals Council of ALJ Krappa's July 13, 2016 decision. (R. 9-14). The attorney that represented Ms. Green during the initial stages of her DIB and SSI application, including the two hearings in front of ALJ Krappa, withdrew as her authorized representative for all subsequent proceedings, including her SSA appeal and the proceedings before this Court. (R. 6, 11). On March 7, 2017, the SSA Appeals Council denied Ms. Green's request for review, making ALJ Krappa's July 13, 2016 opinion the final decision of the Commissioner. (R. 1-3).

Ms. Green filed a complaint with this Court on May 4, 2017, seeking partial modification of ALJ Krappa's July 13, 2016 decision. (DE 1). Specifically, Ms. Green challenges the part of ALJ Krappa's decision which determined that Ms. Green was not entitled to benefits for the Relevant Period. (DE 1 at 3; Pl. Br. at 1). Ms. Green does not challenge the ALJ's favorable determination that she was disabled starting on June 1, 2014, and thus eligible for SSI starting as of that date.

## II. DISCUSSION

To qualify for DIB or SSI, a claimant must meet income and resource limitations and show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382, 1382c(a)(3)(A), (B); 20 C.F.R. § 416.905(a); *see Illig v.*

3

*Comm'r Soc. Sec.*, 570 F. App'x 262, 264 (3d Cir. 2014); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. The Five-Step Process and This Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment, or combination of impairments, meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.) If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If the claimant has the RFC to do her past relevant work, the claimant is not disabled. If the claimant does not have the RFC to do her past relevant work, move to step five.

4

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual issues, the Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610–11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

5

This Court may affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865–66 (3d Cir. 2007). Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221–22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

Because Ms. Green is a *pro se* litigant, her filings with this Court are "entitled to a liberal construction." *See Booth v. Churner, C.O.*, 70 F. App'x 57, 58 (3d Cir.2003); *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013); *Ray v. Colvin*, No. 13-142, 2014 WL 809190, at *5 (D.N.J. Feb. 28, 2014). However, Ms. Green was represented by counsel during her proceedings before ALJ Krappa, so those proceedings are evaluated under the ordinary standards outlined above. *See Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) ("An ALJ owes a duty to a *pro se* claimant to help him or her develop the administrative record.").

### B. The ALJ's Decision

ALJ Krappa followed the five-step process in determining that Ms. Green was not disabled prior to June 1, 2014, but became disabled on that date. Her findings may be summarized as follows:

**Step One:** At step one, ALJ Krappa determined that Ms. Green had not engaged in substantial gainful activity since April 2, 2010, the alleged onset date of disability. (R. 20).

**Step Two:** At step two, ALJ Krappa determined that since the alleged onset date, Ms. Green has had the following severe impairments: disorders of the back; a disorder of the right shoulder; asthma; hypertension; and obesity (under medical guidelines) (20 CFR 404.1520(c) and 416.920(c)). (R. 21). The ALJ explained that these impairments are "severe" under the Regulations because the medical record supports a finding that they are medically determinable impairments which, when considered either individually or in unison, significantly limit the claimant's abilities to do one or more basic work activities. Additionally, ALJ Krappa found that the impairments have lasted at a "severe" level for a continuous period of more than twelve months. (*Id.* at 20-21).

**Step Three:** At step three, the ALJ determined that the severe impairments listed above at step two do not meet or medically equal the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R. 21). The ALJ reasoned that no treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment, and the evidence did not show signs that are the same or equivalent to those of any listed impairment. (*Id.*).

**Step Four:** At step four, the ALJ determined that, prior to June 1, 2014, Ms. Green had the RFC to perform past relevant work. (R. 27). However, after that date, Ms. Green's RFC has prevented her from being able to perform past relevant work. (*Id.*). The ALJ described the rationale for determining the disability onset date of June 1, 2014 as follows:

> This date is approximately six months prior to the MRI of January 2015, which documented clear impingement of the exiting nerve roots (Exhibit B23F). This is out of recognition that the claimant's orthopedic issues did not begin on the day of the MRI but could have reasonably been disabling approximately six months before. Notably, the medical records from prior to that date do *not* demonstrate spinal cord impingement, show *minimal* findings at multiple examinations, indicate *minimal* treatment, and show complaints which cannot be supported by the objective and clinical evidence. The claimant's neurological examinations

7

> yielded negative results, her EMGs were negative for any actual cervical or lumbar radiculopathy. They were positive for poly sensory neuropathy, but this was rated as *mild* and the claimant denied symptoms normally associated with the condition at examinations, such as numbness, tingling[,] and weakness. *No* knee or hip pathology demonstrated. She was told surgery on her shoulder was not warranted, and that her complaints did *not* correlate with the MRI findings (Exhibits B2F, B10F, B11F, B17F, B19F).

(R. 26) (emphasis in original). In other words, the ALJ concluded that the MRI of January 2015 established a more restrictive RFC that warranted a finding of disability. (*Id.*).

**Step Five:** Finally, the ALJ determined that, considering Ms. Green's age, education, work experience, and RFC, since June 1, 2014, there are no jobs that exist in significant numbers in the national economy that she can perform. (R. 28).

### C. Analysis of Ms. Green's Appeal

Ms. Green challenges ALJ Krappa's decision on the basis that Green was allegedly disabled during the Relevant Period. (Pl. Br. at 8).

First, Ms. Green argues that the vocational expert ("VE"), Tanya Edgehill, testified during the May 18, 2016 hearing that her pain from neuropathy, in addition to her other limitations, would preclude her from performing past relevant work as well as any other job in the national economy. She cites the following portion of Ms. Edgehill's testimony: "With that additional limitation [*i.e.*, pain that causes a person to have difficulty concentrating for any more than six hours in an eight-hour work day] it would preclude the past relevant work as well as any other job in the national economy." (R. 86).

This excerpt from Edgehill's testimony, however, must be understood within the context of the dialogue between Edgehill and the ALJ, as well as the ALJ's overall reasoning. The ALJ was constructing serial hypothetical questions for the VE based on different versions of Ms. Green's background and limitations.

The first hypothetical posed by the ALJ was this:

8

> Q: So, Ms. Edshell [sic], let's assume someone of the claimant's age, educational background, and work history who can perform the demands of a reduced range of light [work].

(R. 84) Responding, the ALJ laid out the limitations for the purposes of this first hypothetical, which corresponded to the limitations that affected Ms. Green during the Relevant Period. (R. 84-85) (describing the physical limitations for the hypothetical, such as the ability to lift 10 pounds occasionally, standing or walking six out of an eight-hour work day, the ability to work below shoulder level, but only occasionally beyond that, and more). The ALJ then asked Ms. Edgehill, "How does that affect prior work?" (R. 86). Ms. Edgehill responded, "It doesn't." (*Id.*).

The ALJ then posed a second hypothetical, adding facts to the first:

> Q: Then, let's say that, because of pain that the person experiences, the person would have difficulty concentrating for any more than six hours in an eight-hour work day. How would that affect the ability to maintain employment in any of the prior jobs or any jobs in the national economy?"

(R. 85–86). It was in response to this *second* hypothetical, with its *additional* limitations, that Ms. Edgehill gave the answer now quoted by Ms. Green: "With that additional limitation, your honor, it would preclude the past relevant work as well as any other job in the national economy." (R. 86).

This additional hypothetical limitation (*i.e.*, pain that would create difficulty concentrating for any more than six hours in an eight-hour work day) was part of the basis for ALJ Krappa's determination that the appropriate disability onset date was June 1, 2014. That onset date, recall, was estimated based on the January 2015[3] MRI, which first identified a clear impingement of the exiting nerve roots. And that January 2015 MRI was the source of the

---

3  The ALJ reasoned that Ms. Green's pain did not materialize on the day of the January 2015 MRI. Making an assumption favorable to the claimant, the ALJ projected back six months before the January 2015 MRI to estimate a disability onset date of June 1, 2014. (R. 26).

9

additional limitation that ALJ Krappa posed in her second hypothetical question to the VE. (R. 26, 658).

To simplify, the first hypothetical dealt with Ms. Green's pre-June 1, 2014 condition; the second dealt with her post-June 1, 2014 condition. This exchange between the ALJ and VE, viewed in its entirety, supports her ultimate conclusion that *without* the additional limitation of pain from an impingement of the exiting nerve roots (*i.e.*, Ms. Green's physical state during the Relevant Period), Ms. Green would have had the ability to participate in past relevant work. But, *with* the additional limitation of the pain from an impingement of the exiting nerve roots (estimated to have begun on June 1, 2014), Ms. Green would not be able to participate in past relevant work or any other job in the national economy. Understood in this context, the dialogue between the ALJ and the VE that Ms. Green cites is entirely consistent with the ALJ's conclusions.[4]

Ms. Green's second assertion is that the ALJ did not appropriately consider certain pre-June 30, 2013 medical records. Specifically, she claims that the ALJ did not consider the following: (1) Ms. Green's MRI of the cervical/lumbar spine from Orange Community MRI on January 26, 2011 (R. 378-79, 539); and (2) the progress notes and treatment records of her neurologist, Dr. Alan Clark, from February 8, 2011 through February 27, 2012. (Pl. Br. at 8; DE 20 at 310-11, 357-63).

Turning to (1) Ms. Green's January 26, 2011 MRI of the spine, I find that this evidence does not undermine ALJ's Krappa's conclusions. (R. 378-79, 539). The results of this 2011 MRI indicate a small disc herniation, a dehydrated and bulging disc, mild spondylosis, and reversed curvature. (*Id.*).

---

[4] In any event, even if the VE and ALJ were in disagreement on this point, the ALJ is the one that makes the ultimate disability and RFC determinations. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Chandler v. Comm. Soc. Sec*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and residual functional capacity determinations.").

This MRI did not identify a clear impingement of the exiting nerve roots, as did Ms. Green's January 2015 MRI, which was the basis for ALJ Krappa's disability onset date. (R. 26, 658). In short, the 2011 MRI supports, and does not detract from, the conclusion that Ms. Green's condition deteriorated significantly between January 2011 and January 2015. The January 2015 MRI indicated that Ms. Green's condition had worsened over time to the point of becoming disabling on or about June 1, 2014. To be sure, the MRI results of January 2011 would likely be consistent with Ms. Green's having experienced pain at that time. "Not disabled," however, does not mean "symptom-free." The ALJ was entitled, based on this evidence, to find that Ms. Green was not yet disabled as of January 2011. *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir. 1986); *Qantu v. Barnhart*, 72 F. App'x 807, 811 (6th Cir. 2003) ("We emphasize that a claimant's inability to work pain-free, standing alone, is not sufficient reason to find her disabled.").

I turn next to (2) Dr. Clark's progress notes and treatment records from February 8, 2011 through February 27, 2012. Those documents do not appear anywhere in the record that was before ALJ Krappa. Ms. Green cites to them using the exhibit numbers from the *previous* record that formed the basis of ALJ Wexler's March 21, 2012 opinion denying Ms. Green's disability applications. (*See generally* Pl. Br. at 8; DE 20 at 310-11, 355-63).

Ms. Green fails to explain why these documents were not placed before ALJ Krappa, if it was important to do so. Nor does she explain how they would have altered ALJ Krappa's conclusions. During the proceedings before ALJ Krappa, Ms. Green was still represented by counsel, who supplemented the record at least once, and could have supplemented the record with Dr. Clark's treatment notes if appropriate. Given that Ms. Green's attorney has withdrawn, however, and she is currently *pro se*, I have reviewed these additional documents. Nothing in these additional documents constitutes grounds to modify or vacate ALJ Krappa's determination, which was supported by substantial evidence and remains so. (*See* DE 20 at 310-11, 355-63). Dr. Clark

11

did cursorily check a box indicating that Ms. Green was incapacitated to the point that she cannot work a 40-hour work week. (DE 20 at 361) The ALJ, applying Social Security law and regulations, is the one that determines whether a claimant is capable of work. A doctor's opinion on that ultimate issue, especially a mere check-box as opposed to a reasoned assessment of the claimant's capacities, is of little value. *See* n. 4, *supra*; *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"); *Griffin v. Comm'r of Soc. Sec.*, 305 F. App'x 886, 890-91 (3d Cir. 2009).

Evidence not before the ALJ cannot establish that her decision was not supported by "substantial evidence." *See Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir.1991) (noting that evidence not presented to the ALJ "cannot be used to argue that the ALJ's decision was not supported by substantial evidence"). Remand for consideration of new evidence would be appropriate if "the new evidence is material and [ ] there is good cause for [the claimant's] failure to incorporate this evidence into the record in the prior proceedings." *Id.* Here, however, the new evidence is not material and there has been no attempt to show good cause for the failure to incorporate this evidence into the record before ALJ Krappa.

There is additional reason, moreover, to believe that any error was surely harmless. ALJ Krappa *did* consider subsequent records from the same physician, Dr. Clark, based on appointments that occurred during the Relevant Period. (R. 26, 66-67). That evidence is superior in that it represented Dr. Clark's conclusions with respect to Ms. Green's condition at the relevant time. In reference to those later diagnoses, ALJ Krappa noted that "the clinical and laboratory evidence documented. . . fails to support" the assessment that Ms. Green could not work prior to June 2014. (R. 26, 66-67).

The Defendant argues that the earlier medical records should be excluded on *res judicata* grounds, as they were considered in connection with the prior ALJ's decision denying benefits on March 21, 2012. (SSA Br. at 14)

12

("review of the prior period is barred by *res judicata* and the ALJ did not err by not including Dr. Clark's notes") (citing 20 C.F.R. 404.957(c)(1)). The earlier ALJ decision was a final one. (DE 20 at 3-6).

If she had been asked to consider the issue, ALJ Krappa would have been within her authority to decline to reassess the prior ALJ's non-disability determination on *res judicata* grounds. *Tobak v. Apfel*, 195 F.3d 183, 186 (3d Cir. 1999) ("[R]es judicata may only be properly applied to preclude a subsequent claim for disability benefits where the 'same' claimant has filed a previous application based on the 'same' issues and where such prior determination has become final by virtue of administrative or judicial action."). However, it appears that ALJ Krappa was neither presented with the *res judicata* bar nor asked to exercise her discretion to disregard it. *Id.* ("[E]ven if *res judicata* may properly be applied, the Commissioner has discretion whether to reopen a prior disability benefits application for 'good cause' within four years of the date of notice of the initial determination."). I would add the commonsense point that there is little reason to think that documents supporting a prior denial of disability, if considered this time, would require a finding of disability.

Overall, ALJ Krappa's decision was supported by substantial evidence. She went through the record thoroughly and relied on the evidence before her in making her determinations. For the period prior to June 1, 2014, ALJ Krappa determined that the medical records "do *not* demonstrate spinal cord impingement, show *miminal* findings at multiple examinations, indicate *minimal* treatment, and show complaints which cannot be supported by the objective and clinical evidence." (R. 26) (emphasis in original). These assessments are properly supported by substantial evidence within the record. Consequently, I will affirm the decision of the ALJ.

## CONCLUSION

The ALJ's July 13, 2016 decision denying DIB and SSI benefits for the period prior to June 1, 2014, and granting SSI benefits for the period thereafter, is affirmed. An appropriate order accompanies this opinion.

Dated: February 27, 2019

KEVIN MCNULTY
**United States District Judge**